Westlaw.

223 F.Supp.2d 681
(Cite as: 223 F.Supp.2d 681)

H

United States District Court, E.D. Pennsylvania.
Cheryl SOLOMEN, Plaintiff,
v.
REDWOOD ADVISORY COMPANY, Defendant.
No. 00-CV-858.

Sept. 24, 2002.

Former employee brought action under Title VII and Pennsylvania Human Rights Act alleging that employer had terminated her employment due to her pregnancy. After entry of summary judgment in favor of employer, employer moved for costs and attorney fees. The District Court, Anita B. Brody, J., held that employer was not entitled to recover its attorney fees and costs.

Motion denied.

West Headnotes

**Civil Rights 78 ⇐1584**

78 Civil Rights
   78IV Remedies Under Federal Employment Discrimination Statutes
      78k1584 k. Costs. Most Cited Cases

**Civil Rights 78 ⇐1592**

78 Civil Rights
   78IV Remedies Under Federal Employment Discrimination Statutes
      78k1585 Attorney Fees
         78k1592 k. Awards to Defendants; Frivolous, Vexatious, or Meritless Claims. Most Cited Cases
    (Formerly 78k416)
Former employee's claim for pregnancy discrimination was not frivolous, unreasonable, or without merit, and thus employer was not entitled under Title VII to recover its attorney fees and costs, even though court entered summary judgment in favor of employer on ground that employee failed to establish prima facie case, where there was evidence that employer's founder made hostile comments concerning employee's pregnancy, employee had legal foundation for her claim, and nothing indicated that employee sought to harass employer by filing suit. Civil Rights Act of 1964, § 706(k), as amended, 42 U.S.C.A. § 2000e-5(k).

*681 Samuel A. Dion,Dion, Goldberger, Philadelphia, PA, for plaintiff.

Melissa E. Lea, David L. Gollin, Wolf, Block, Schorr & Solis Cohen, Philadelphia, PA, for defendant.

*MEMORANDUM AND ORDER*

ANITA B. BRODY, District Judge.

On February 16, 2000, plaintiff Cheryl Solomen ("Solomen"), filed suit against defendant Redwood Advisory Company ("Redwood"), alleging that Redwood had terminated her employment due to her 1997 pregnancy. Solomen brought her claims for pregnancy discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) (1994), and the Pennsylvania Human Rights Act, 43 P.S. § 951 *et seq.* On January 31, 2002, I granted defendant's motion for summary judgment on both the state and federal claims. Defendant then moved for costs and attorney's fees.

**Defendant's Motion for Fees**

Redwood's motion seeks taxable costs of $3496.95 pursuant to 28 U.S.C. § 1920 and non-taxable costs and attorney's fees of $98,338.45 pursuant to Fed.R.Civ.P. 54(d)(2) and 42 U.S.C. § 2000e-5(k). Plaintiff filed a response opposing the granting of any costs or attorney's fees. Defendant's motion raises the issue of when a claim dismissed upon a motion for summary judgment becomes frivolous.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

223 F.Supp.2d 681
(Cite as: 223 F.Supp.2d 681)

*Legal Authority*

A prevailing party in a Title VII case may recover attorney's fees under § 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k). [FN1] See *682 EEOC v. L.B. Foster Co., 123 F.3d 746, 750 (3d Cir.1997) This section of the statute provides that:

> FN1. In light of plaintiff's lack of opposition to the granting of costs pursuant to 28 U.S.C. § 1920 and upon review of the enumeration of these fees in Exhibit 11 to defendant's motion, I find that the fees sought under § 1920 are reasonable. Therefore, I shall grant defendant's motion to the extent that it seeks fees pursuant to § 1920.

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.
42 U.S.C. § 2000e-5(k).

The fee-shifting provisions of statutes like Title VII are an exception within our judicial system. Generally, "federal courts must apply the American rule requiring each party to pay from his own pocket for the services of his attorney." *Skehan v. Bd. of Tr. of Bloomsburg State College,* 538 F.2d 53, 56 (3d Cir.1976) (citing *Alyeska Pipeline Co. v. Wilderness Soc'y,* 421 U.S. 240, 260, 95 S.Ct. 1612, 44 L.Ed.2d 141). Consequently, "[u]nlike the British system, in American courts the general rule is that attorneys' fees are not recoverable." *Merola v. Atlantic Richfield Co.,* 493 F.2d 292, 297 (3d Cir.1974). Congress deliberately departed from this presumption when it enacted the fee-shifting civil rights statutes. This decision both facilitated the filing of civil rights claims by awarding attorney's fees to a prevailing plaintiff and deterred frivolous suits by allowing a prevailing defendant to collect fees as well. *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 419-20, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Thus, the "prevailing party" under § 2000e-5(k) may be either the plaintiff or the defendant. *Id.* at 421, 98 S.Ct. 694; *Barnes Found. v. Township of Lower Merion,* 242 F.3d 151, 157-58 (3d Cir.2001).[FN2]

> FN2. In *Barnes,* the plaintiff unsuccessfully alleged civil rights violations under § 1983 and § 1985 against the defendants. The prevailing defendants later petitioned for attorney's fees under 42 U.S.C.A. § 1988. The standards for assessing claims for attorney's fees pursuant to § 1988 and § 2000(e)-5(k) are identical. *Barnes,* 242 F.3d at 158 n. 6. Accordingly, cases used to interpret one statute may be used to interpret the other. *Id.*

The standard for awarding attorney's fees to prevailing defendants is substantially more stringent than that for awarding fees to prevailing plaintiffs. *Christiansburg,* 434 U.S. at 421, 98 S.Ct. 694; *Barnes,* 242 F.3d at 157-58. The Supreme Court held in *Christiansburg* that "under § 706(k) of Title VII a prevailing *plaintiff* ordinarily is to be awarded attorney's fees in all but special circumstances." *Christiansburg,* 434 U.S. at 417, 98 S.Ct. 694 (emphasis original). In contrast, "attorney's fees [to a prevailing Title VII defendant] are not routine, but are to be only sparingly awarded." *EEOC v. L.B. Foster Co.,* 123 F.3d 746, 751 (3d Cir.1997)( quoting *Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 503 (3d Cir.1991)).

Relying on *Christiansburg,* the Third Circuit has cited two reasons for this asymmetrical standard. *See e.g., Dorn's Transp., Inc. v. Teamsters Pension Trust Fund,* 799 F.2d 45, 48 (3d Cir.1986), *L.B. Foster,* 123 F.3d at 750. First, the "routine availability of fees to prevailing plaintiffs in civil rights actions reflects a congressional desire to encourage the bringing of such suits." *Dorn's,* 799 F.2d at 48 (citing S.Rep. No. 1011, 94th Cong., 2d Sess. 1, *reprinted in* 1976 U.S.Code Cong. & Ad. News 5908). Second, a fee award to prevailing civil rights

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

plaintiffs penalizes violators of federal law. *Id.* (citing *Christiansburg,* 434 U.S. at 418, 98 S.Ct. 694).

*683 Although this standard for fee awards favors plaintiffs in civil rights suits over defendants, it does not insulate plaintiffs from paying a prevailing defendant's attorney's fees. Rather, "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg,* 434 U.S. at 421, 98 S.Ct. 694. The Third Circuit has adopted the *Christiansburg* standard and awards attorney's fees to a prevailing defendant when the plaintiff's civil rights case is deemed "frivolous, unreasonable, or without foundation." *See e.g., L.B. Foster,* 123 F.3d at 751; *Quiroga,* 934 F.2d at 502.

The *Christiansburg* standard has failed to generate a bright-line test.[FN3] Consequently, the Third Circuit has noted several factors that a district court should consider in determining whether an award of attorney's fees to a Title VII defendant is appropriate. In *Barnes,* the court noted that affirmative findings of the following five factors could diminish a prevailing defendant's likelihood of obtaining attorney's fees: (1) plaintiff established a prima facie case; (2) defendant offered to settle; (3) the trial court held a full trial on the merits; (4) the issue in question was one of first impression requiring judicial resolution; and (5) the controversy was based sufficiently upon a real threat of injury to the plaintiff. *Barnes,* 242 F.3d at 158; *see also L.B. Foster,* 123 F.3d at 751. These factors, however, are "merely guidelines, not strict rules," and determinations of fee awards are properly made on a case-by-case basis. *Barnes,* 242 F.3d at 158.

> FN3. The Supreme Court seems to have recognized this problem from the standard's inception. When it adopted, in modified form, the "frivolous, unreasonable, or without foundation" standard, the Court observed "[t]o the extent that abstract words can deal with concrete cases, we think that the concept embodied in the language adopted by these two Courts of Appeals is correct." *Christiansburg,* 434 U.S. at 421, 98 S.Ct. 694.

*Factual Analysis*

In light of *Christiansburg* and the Third Circuit's response to that case, the question before me is whether or not the plaintiff's claim for pregnancy discrimination was frivolous, unreasonable, or without merit. I hold that it was not.

In making this decision, I am faced with the "not inconsiderable task[ ]" of "giving content to ... indefinite adjectives." *Neitzke v. Williams,* 490 U.S. 319, 324-325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). As the most recent cases within the Third Circuit addressing *Christiansburg* have tended to focus their analysis on the issues of frivolousness,[FN4] it is helpful to cite three definitions of "frivolous" previously used by the courts. First, in *Neitzke,* the Supreme Court held that "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." *Id.* at 325, 109 S.Ct. 1827. Second, the Ninth Circuit, while noting the importance of a "foundation in fact or law," held that a suit "is frivolous if the results are obvious, or the arguments ... are wholly without merit." *In re George,* 298 F.3d 1160, 1164 (9th Cir.2002). The Seventh Circuit has used a nearly identical definition. "An appeal is frivolous 'when the result is obvious or when the appellant's argument is wholly *684 without merit.' " *Grove Fresh Distrib., Inc. v. John Labatt, Ltd.,* 299 F.3d 635, 642 (7th Cir.2002) (citation omitted). Finally, an earlier Seventh Circuit decision held that "[a] frivolous suit ... is not merely a suit that fails, or even a suit that lacks a solid basis-a long shot. It is a suit so completely without hope of succeeding that the court can infer that the plaintiff brought it to harass the defendant rather than to obtain a favorable judg-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

223 F.Supp.2d 681
(Cite as: 223 F.Supp.2d 681)

ment." *Bittner v. Sadoff & Rudoy Indus.,* 728 F.2d 820, 828 (7th Cir.1984) (citation omitted).

> FN4. *See Barnes,* 242 F.3d at 157-158, 162 (framing its analysis by asking whether the plaintiff's claims were legally or factually frivolous); *Stefanoni v. Board of Chosen Freeholders County of Burlington,* 180 F.Supp.2d 623, 628 (D.N.J.2002), (stating that "a detailed recitation of the facts ... is helpful in demonstrating that this case was unreasonable and baseless, and thus frivolous").

From these definitions and the case law cited above, three questions emerge: 1) did plaintiff Cheryl Solomen have a factual or legal foundation for her claims?; 2) were the results of her lawsuit obvious?; and 3) did she file suit in order to harass her former employer, Redwood Advisory Company? I will address each question in turn.

*Factual and Legal Sufficiency*

My decision to grant summary judgment in defendant's favor obviously raises questions about the sufficiency of plaintiff's claims. Based on both my order granting its request for summary judgment and plaintiff's failure to state a prima facie case of pregnancy discrimination, defendant argues that plaintiff's case necessarily lacked any foundation and was therefore frivolous.[FN5] This position misstates the law. In *Neitzke,* the Supreme Court held that "[w]hen a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate, but dismissal on the basis of frivolousness is not." *Neitzke,* 490 U.S. at 328, 109 S.Ct. 1827. *Barnes* illustrates the same principle in the context of summary judgment. In *Barnes,* the court denied attorney's fees to a prevailing defendant, Robert Marmon, because it found that the plaintiff had presented direct evidence, which, while "thin," nonetheless sufficed to prevent a finding of frivolity or unreasonableness.

*Barnes,* 242 F.3d at 165. Similarly, a court within this district has previously held that "the grant of summary judgment in defendant's favor does not necessarily mean the action was frivolous for awarding attorney's fees." *Whiteland Woods, L.P. v. Township of W. Whiteland,* No. Civ. A. 96-8086, 2001 WL 936490, *5 (E.D.Pa. Aug.14, 2001) The standard for finding frivolity or a lack of foundation therefore must require something beyond that which is required for granting either a motion to dismiss or a motion for summary judgment.

> FN5. In my earlier decision, *Solomen v. Redwood Advisory Co.,* 183 F.Supp.2d 748 (E.D.Pa.2002), I held that plaintiff had "not met her burden of making out a prima facie case." *Id.* at 754. Plaintiff failed to meet this burden because she could not demonstrate that her pregnancy affected her at or near the time of her termination. *Id.* at 755.

To identify this additional element I take my cue from *Barnes* and address whether the plaintiff's claims were factually and legally sufficient. *See Barnes,* 242 F.3d at 157-158, 162. Like the court in *Barnes,* I believe that the evidence before me is thin but factually sufficient. Evidence exists of remarks made by Dunston, defendant's founder, concerning plaintiff's pregnancy. Similar to those remarks made by Marmon in *Barnes,* these comments indicate a hostile attitude. *See Barnes,* 242 F.3d at 154. While I ultimately found no evidence of pretext in this case, I cannot-and did not-say that it was frivolous to believe that Dunston's comments were discriminatory. Rather, I held that the comments were too remote in time to raise a material issue of whether any such motive influenced defendant's decision to fire Solomen. *See* \*685*Solomen v. Redwood Advisory Co.,* 183 F.Supp.2d 748, 754-755 (E.D.Pa.2002). Accordingly, plaintiff's case did not completely lack a factual foundation.

Likewise, plaintiff's claim was legally sufficient. Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), it is unlawful for an em-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

223 F.Supp.2d 681
(Cite as: 223 F.Supp.2d 681)

ployer to discharge or otherwise discriminate against any individual on the basis of "race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). In 1978, Congress amended Title VII by enacting the Pregnancy Discrimination Act ("PDA"), which provides in relevant part:

> The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work.

42 U.S.C. § 2000e(k)(1994). The Supreme Court, interpreting the PDA, has held that § 2000e-2(a)(1) "prohibit[s] an employer from discriminating against a woman because of her capacity to become pregnant unless her reproductive potential prevents her from performing the duties of her job." *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 206-207, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991). *See also Gallo v. John Powell Chevrolet, Inc.*, 765 F.Supp. 198, 209 (M.D.Pa.1991) (holding that Title VII, as amended by the PDA, makes it unlawful for an employer to discriminate "on the basis of pregnancy, childbirth, or medical conditions related to pregnancy").

Defendant maintains that plaintiff failed to show that she fell within this protected class. Although I did hold that plaintiff had not met the burden for establishing a prima facie case, defendant's assertion mischaracterizes my decision. *See Solomen*, 183 F.Supp.2d at 754-755.

Plaintiff also filed suit under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* Drawing on decisions in which plaintiffs prevailed in pregnancy-related PHRA suits, Pennsylvania's district courts have noted that "there is a line of cases in Pennsylvania that has held that women terminated because they became pregnant have suffered sexual discrimination...." *Brennan v. Nat'l Tel. Directory Corp.*, 850 F.Supp. 331, 343 (E.D.Pa.,1994) (citing *Gallo v. John Powell Chevrolet, Inc.*, 765 F.Supp. 198, 209 (M.D.Pa.1991)).

Both the Supreme Court and local district courts have expressly held that Title VII and the PHRA prohibit an employer from discriminating against an employee based on her pregnancy. No evidence exists of why Solomen's claim, presented with a sufficient factual record, would be legally barred. Plaintiff therefore had a legal foundation for her claim.

*Obviousness of the Result*

The "Supreme Court has indicated that 'it is important that a ... court resist the understandable temptation to engage in *post hoc* reasoning by concluding that because a plaintiff did not ultimately prevail his action must have been unreasonable or without foundation.'" *Barnes*, 242 F.3d at 158 (quoting *Christiansburg*, 434 U.S. at 421-22, 98 S.Ct. 694). This exhortation applies to determinations of obviousness as well. Although I ultimately decided that Plaintiff had failed to raise a "genuine issue as to any material fact," it was a close decision. Fed.R.Civ.P. 56(c). The serious consideration that I gave to this question precludes my finding either that the answer was obvious or that the claim was therefore frivolous or unreasonable.

*686 *Possibility of Harassment*

Redwood argues that Solomen's lawsuit and subsequent conduct were intended to harass her former employer in retaliation for her being fired. If true, these assertions might justify an award of attorney's fees to defendant.

The Third Circuit and its district courts have responded unfavorably to plaintiffs who brought their claims as a means of gaining leverage in other disputes. In *Barnes* the court concluded that the plaintiff "cynically brought this frivolous action to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

223 F.Supp.2d 681
(Cite as: 223 F.Supp.2d 681)

capitalize on its minority status to achieve its goal of alleviating its parking problem." [FN6] *Barnes,* 242 F.3d at 165. Deeming this conduct "outrageous," the court awarded attorney's fees to five of the six prevailing defendants. *Id.* In *Whiteland Woods,* the court labeled plaintiff's request for $2,100,000 in damages "vexatious" and "unreasonable" because plaintiff had already received injunctive relief and plaintiff's only injury was the inability to videotape a single meeting of the township's Planning Commission. *Whiteland Woods,* 2001 WL 936490 at *5. Believing that "[p]laintiff used this action to gain leverage in settling other litigation with the Township defendants," the court awarded the prevailing defendant attorney's fees. *Id.* Finally, in *Stefanoni v. Bd. of Chosen Freeholders County of Burlington,* 180 F.Supp.2d 623 (D.N.J.2002), the court emphasized two facts: first, that plaintiff's employer fired her based on a lengthy report prepared by an independent investigator from the state's Attorney General office; second, that the charges presented in this report were successfully tried before a County Hearing Officer. Based on these facts the court held that "[the report and hearing] made plaintiffs aware of the factual and legal infirmities of all their claims" prior to trial, suggesting that the subsequent lawsuit was designed to harass the former employer rather than to rectify an injustice. *Id.* at 633.

> FN6. Evidence for this claim can be found in the district court opinion. *See Barnes Foundation v. Township of Lower Merion,* 982 F.Supp. 970, 1017-1018 (E.D.Pa.1997).

The subjective nature of any inquiry into whether or not a lawsuit is intended to harass or manipulate a defendant makes any such determination difficult. As the court cannot read a plaintiff's mind, it must look to objective circumstances like those described above. In the present case, there is no evidence of Solomen's seeking to advance an alternate agenda like the plaintiffs in *Barnes* and *Whiteland Woods.* Nor has Solomen conclusively tried the facts of her case before an independent arbiter like the plaintiffs in *Whiteland Woods* and *Stefanoni.*[FN7]

> FN7. In June 1998, an independent referee with the Pennsylvania Unemployment Compensation Board of Review did evaluate the facts of plaintiff's case after she filed for unemployment compensation. The referee held that although plaintiff "may have used poor judgment" in failing to disclose immediately her connection to her brother-in-law, Solomen's failure "is not considered wilful misconduct as described under Section 402(e)." Under § 402(e), wilful misconduct is defined as "a deliberate violation of the employer's rules, a disregard of the standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interests of the employee's duties and obligations to the employer." While critical, the reviewer's findings did not establish or suggest that Solomen deserved to be fired.

Defendant points to the allegedly dilatory efforts of plaintiff's attorney during the discovery process as evidence of Solomen's desire to harass. Redwood, however, only filed one motion to compel-a motion that it later withdrew-and one motion to enforce subpoenas, matters over which plaintiff had only speculative control. Although the judicial system aspires to a frictionless *687 pre-trial process, in reality, such motions and complaints are common. The discovery record for this case therefore lies within the mainstream and does not reveal an intent to harass.

Neither the facts of this case nor the law of this circuit support Redwood's contention that Solomen sought to harass her former employer by filing suit. Even if plaintiff's lawyer had abused the discovery process, these actions would be sanctionable under Rule 11 of the Federal Rules of Civil Procedure, not § 2000e-5(k).[FN8] Under this rule, a plaintiff cannot be held liable for defendant's legal fees

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

223 F.Supp.2d 681
(Cite as: 223 F.Supp.2d 681)

solely because her attorney allegedly failed to cooperate. She cannot even necessarily be held liable if her attorney filed a frivolous suit. Rather, the Third Circuit has held that "implicit" in the *Christiansburg* standard "is the premise that *plaintiff* knew or should have known the legal or evidentiary deficiencies of his claim." *Brown v. Borough of Chambersburg,* 903 F.2d 274, 277 (3d Cir.1990) (emphasis added); *see also Hutter v. SEPTA,* No. Civ. A. 99-4879, 2000 WL 873319, at *4 (E.D.Pa. June 23, 2000) (noting that "courts have abstained from awarding fees where it was unclear whether the plaintiff was personally accountable for the frivolous nature of her case") (citing *Murray v. Septa,* Civ. A. No. 96-7971, 1998 WL 778325 (E.D.Pa. Nov.9, 1998); *Hicks v. Arthur,* 891 F.Supp. 213 (E.D.Pa.1995), *aff'd* 91 F.3d 123 (3d Cir.1996)). Under *Brown,* then, Solomen cannot be liable for Redwood's attorney's fees unless she knew or should have known that her claim was frivolous. For the reasons discussed below, I find that plaintiff neither knew nor should have known of the legal infirmities within her claim.

> FN8. In a March 29, 2001 letter to Solomen's attorney, Samuel Dion, defendant's counsel threatened to bill Dion for attorney's fees related to a deposition that Dion failed to attend. This letter suggests that Redwood also understands the difference between what plaintiff and her lawyer can be sanctioned for.

Solomen's lawsuit ended unsuccessfully. With the benefit of hindsight and the deposition of plaintiff by defendant's counsel, an informed observer can understand why Solomen's claim failed: she was unable to raise a genuine issue as to whether or not her pregnancy precipitated Redwood's decision to fire her. Solomen, however, has not been trained in the rigors of legal reasoning. No prior proceeding demonstrates that Solomen knew or should have known about the infirmities of her case. Nor is there evidence of Solomen's attempting to gain an advantage over the defendant via her lawsuit, which would suggest pretext and thus knowledge of the claim's shortcomings.

Defendant has mounted a strong case for why it chose to terminate Solomen's employment: Solomen failed to disclose her relationship to her brother-in-law, a plaintiff in a slip-and-fall case filed against defendant, for approximately six months. Arguably, this delay justified plaintiff's termination, impeached her credibility, and demonstrated that she should not have questioned defendant's motive for firing her. During the seven years prior to plaintiff's termination, however, Solomen had proven her value as an employee to the defendant: she was promoted and received consistent raises and bonuses. Nonetheless, during the last year of her employment with Redwood, plaintiff felt she experienced unusual and undeserved scrutiny. Although I found insufficient evidence of a nexus between Redwood's allegedly discriminatory conduct and Solomen's termination, I cannot conclude from these facts that Solomen knew or should have known that her allegations lacked any evidentiary foundation.

*688 *Conclusion*

Essentially, this case falls within the heartland of discrimination disputes. The decision to award attorney's fees in these circumstances could lead to a chilling effect on future civil rights plaintiffs, a result that would contravene Congress' intent in enacting the very civil rights statutes at issue here. *See Christiansburg,* 434 U.S. at 419-20, 98 S.Ct. 694. Based on the legislative history and case law surrounding these statutes, it is unlikely that Congress either envisioned or desired that plaintiffs in civil rights or Title VII actions might be subject to a sanction greater than that imposed in those lawsuits where Congress had not provided for fee-shifting.

I find plaintiff's claim neither frivolous, nor unreasonable, nor without foundation. Accordingly, I will deny defendant's request for attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

223 F.Supp.2d 681
(Cite as: 223 F.Supp.2d 681)

Page 8

As the prevailing defendant, Redwood is entitled to those taxable costs available under 28 U.S.C. § 1920 Fed.R.Civ.P. 54(d)(1).

### *ORDER*

**AND NOW,** this day of September, 2002, upon review of the filings of the parties, it is **ORDERED** that:

(1) Defendant's Motion for Attorney's Fees and Costs (Docket Entry # 46) is **DENIED** as to defendant's request for attorney's fees and costs pursuant to Fed.R.Civ.P. 54(d)(2) and 42 U.S.C. § 2000e-5(k) and **GRANTED** as to defendant's request for court costs of $3496.95 pursuant to 28 U.S.C. § 1920.

E.D.Pa.,2002.
Solomen v. Redwood Advisory Co.
223 F.Supp.2d 681

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.